**Delbert GRAY, Plaintiff-Appellant,**

v.

**Norman UDEVITZ, and Denver Post, Inc., a Colorado corporation, Defendants-Appellees.**

**No. 79–1739.**

United States Court of Appeals, Tenth Circuit.

Argued Jan. 26, 1981.

Decided Aug. 7, 1981.

Thomas T. Zollinger, Rock Springs, Wyo., for plaintiff-appellant.

Walter A. Steele of White & Steele, P. C., Denver, Colo. (Carl L. Lathrop of Lathrop & Uchner, Cheyenne, Wyo., with him on brief), for defendants-appellees.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Delbert Gray brought this diversity action for libel against Norman Udevitz and the Denver Post, Inc. The district court granted defendants' motion for summary judgment and Gray appeals. We affirm.

Gray's claim arose out of a 1977 story written by Udevitz and published by the Post about alleged corruption and criminal activity in Rock Springs, Wyoming. The article reported that a three-month investigation by the Post showed extensive drug

dealing, prostitution, and gambling occurring openly in Rock Springs. The article focused on the relationship between those who allegedly controlled the illicit operations and various city officials, including the mayor, police chief, and sheriff. Gray was mentioned in a small portion of the story. The following excerpt contains the allegedly libelous statements:

"Last year, a patrolman was observed by fellow officers selling drugs on the street from his squad car. But no action was taken against the man, and he was allowed to resign.

"Another policeman admitted last April that he was extorting free sexual favors from a prostitute, but he was also allowed to rseign [sic].

"The department over the past few years also has hired a few policemen with misdemeanor criminal records.

"One of those officers, Delbert Gray, is now chief investigator for the county attorney. Although Gray no longer works for the Rock Springs Police Department, Wataha calls Gray 'one of the best investigators we have.'

"IN JULY 1976, however, Gray—who was working as a bartender in the Townsend Club—admitted to state agents that while he had been a Rock Springs policeman he both used and sold heroin and lived with a prostitute through whom he leaked information about scheduled vice raids."

Rec., vol. I, at 4.

On September 27, 1978, Gray filed a complaint alleging that the last of the quoted paragraphs defamed him because he had never sold or used heroin or leaked information about vice raids, nor had he ever admitted doing so to state agents. The complaint also alleges the passages were structured to create the impression that he was the patrolman who was "observed by fellow officers selling drugs on the street" and who had admitted "extorting free sexual favors from a prostitute." *Id.*

Defendants filed a motion for summary judgment. On May 29, 1979 a hearing on the motion was set for June 8. On May 31, in response to Gray's request, the hearing was rescheduled for June 26. Gray did not undertake any discovery until June 22, when he gave notice that he would take Udevitz's deposition on June 29, three days after the rescheduled hearing on summary judgment and shortly before the July 1 cut-off date for pretrial discovery.[1]

Defendants supported their summary judgment motion with affidavits from Udevitz and both of the state agents who were his sources for the statements made about Gray. Udevitz confirmed he obtained his information from the state agents and their written reports. Both agents stated that they had interrogated Gray in the course of their investigation, and that Gray admitted he had used and sold heroin while a police officer and had lived with a prostitute and told her about suspected police raids against vice operators. The agents stated further that Gray had submitted to a psychological stress evaluation test which affirmed the veracity of his admissions.

In response, Gray filed a brief contending he was not a public official within the meaning of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). He filed no affidavit to rebut the assertions set forth in affidavits supporting defendants' motion for summary judgment. Rather, he stated in his brief:

"The balance of defendants' argument and brief is based upon an assumption that plaintiff cannot offer proof of 'actual malice' in the event this Court finds plaintiff to be a 'public official.' Rule 56 FRCP, is not designed to be a substitute for discovery. It appears that defendants' argument in this regard is designed to force plaintiff into allowing discovery, at a Rule 56 hearing, when defendant has not sought discovery. Defendants have made the assertion that 'plaintiff cannot

---

1. Discovery originally was to have been completed by May 1, 1979 under the terms of a pretrial order, but the court subsequently extended the time when it reset the trial date for August 27, 1979.

sustain his burden of proof of actual malice.' In the absence of attempts to discover plaintiff's evidence, this is a presumptious [*sic*] and unfounded assertion. Common sense would dictate that if defendants have no interest in discovering what facts plaintiff intends to prove, they should be precluded from asserting their lack of discovery as a bar to plaintiff's claim."

Rec., vol. I, at 101.

The hearing was held. Finding no genuine issue of material fact to exist, the trial court granted defendants' motion for summary judgment. In its written order, the court ruled that Gray, as a policeman in a town of 30,000 people, was a public official within the meaning of *New York Times*. It found that Gray had provided no evidence whatsoever from which to infer that defendants had published the article with malice or in reckless disregard of the truth.

Gray argues on appeal that the trial court erred in ruling he was a public official. He asserts there is no evidentiary basis for such a conclusion. Gray also contends the court committed an abuse of discretion in disregarding the July 1st discovery cut-off date and in refusing to continue the hearing on the summary judgment motion until Udevitz had been deposed.

## I.

### Status as a Public Official

The First Amendment is premised on the belief that free and open debate on public issues must be protected from government interference. The Amendment "was fashioned to assure unfettered interchange of ideas for the bringing of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957). If these ends are to be achieved, protection of expression cannot be limited to what is true. "[E]rroneous statement is inevitable in free debate[;] . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" *New York Times*, 376 U.S. at 271–72, 84 S.Ct. at 721–22 (quoting *N.A.A. C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1962)). Consequently, the Supreme Court has placed limits on the award of damages in defamation actions.

One such limitation is the rule established in *New York Times*, 376 U.S. at 279, 84 S.Ct. at 726, that "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." [2] In fleshing out the *New York Times* standard, the Court has indicated that a showing of actual malice requires the public official to provide "clear and convincing proof," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789, "that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

Two prerequisites must be met for the *New York Times* standard to apply. The plaintiff must be a public official for the purposes of the article [3] and the defamatory

**2.** The Supreme Court has extended the *New York Times* standard to cover "public figures" who are not public officials. *See, e. g., Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

**3.** Defendant argued at the summary judgment proceedings "that plaintiff was not a public official *at the time of publication* of the allegedly libelous matter and was not, therefore, required to meet the *New York Times v. Sullivan* burden of proof standards . . . ." Appellant's Brief at 2 (emphasis added). That the person defamed no longer holds the same position does not by itself strip him of his status as a public official for constitutional purposes. If the defamatory remarks relate to his conduct while he was a public official and the manner in which he performed his responsibilities is still a matter of public interest, he remains a public official within the meaning of *New York Times*. *See Rosenblatt v. Baer*, 383 U.S. 75, 87

statements must relate to his official conduct. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 273–75, 91 S.Ct. 621, 626–27, 28 L.Ed.2d 35 (1971); *Garrison v. Louisiana*, 379 U.S. 64, 76–77, 85 S.Ct. 209, 216–217, 13 L.Ed.2d 125 (1964); *New York Times*, 376 U.S. at 283 n.23, 84 S.Ct. at 727 n.23. Both of these requirements are satisfied here.

The allegedly defamatory remarks in Udevitz's article relate to Gray's conduct while he was a police officer in Rock Springs. Gray's status as a policeman during the period discussed in the story is undisputed. Gray's counsel admitted during the summary judgment proceedings that Gray was a police officer, and said at oral argument before this court that Gray's duties were those of the normal street patrolman. As a policeman in a town of 30,000, the trial court found Gray to be a public official, quoting from *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill.2d 257, 239 N.E.2d 837 (1968):

> " 'It is our opinion that the plaintiff is within the "public official" classification. Although as a patrolman he is "the lowest in rank of police officials" and would have slight voice in setting department policies, his duties are peculiarly "governmental" in character and highly charged with the public interest. . . .' "

Rec., vol. I, at 115.

We agree with the trial court that Gray's status as a police officer in Rock Springs made him a public official. Street level policemen, as well as high ranking officers, qualify as public officials under the test of *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). They "have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs," *id.* at 85, 86 S.Ct. at 676, and their position "has such apparent importance that the public has an independent interest in the qualifica-

tions and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees. . . ." *Id.* at 86, 86 S.Ct. at 676. The cop on the beat is the member of the department who is most visible to the public. He possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss. The strong public interest in ensuring open discussion and criticism of his qualifications and job performance warrant the conclusion that he is a public official.

Police officials have uniformly been treated as public officials within the meaning of *New York Times. See, e. g., Time, Inc. v. Pape*, 401 U.S. 279, 291–92, 91 S.Ct. 633, 640–41, 28 L.Ed.2d 45 (1971) (deputy chief of detectives and lieutenant); *St. Amant v. Thompson*, 390 U.S. 727, 730, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (deputy sheriff); *Henry v. Collins*, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965) (city police chief); *Meiners v. Moriarity*, 563 F.2d 343, 352 (7th Cir. 1977) (federal drug enforcement agent); *Ethridge v. North Mississippi Communications, Inc.*, 460 F.Supp. 347, 350 (N.D.Miss.1978) (undercover narcotics agent); *Thuma v. Hearst Corp.*, 340 F.Supp. 867, 869 (D.C.Md.1972) (police captain); *Rosales v. City of Eloy*, 122 Ariz. 134, 593 P.2d 688, 689 (1979) (police sergeant); *Ammerman v. Hubbard Broadcasting, Inc.*, 91 N.M. 250, 572 P.2d 1258, 1261 (Ct.App.1977). *See generally*, Annot., 19 A.L.R.3d 1361, 1375–76 (1968).

The trial court was correct in ruling that Gray was required to show the defendants published the article with "actual malice" in order to recover. *New York Times*, 376 U.S. at 283, 84 S.Ct. at 727.

n.14, 86 S.Ct. 669, 676 n.14, 15 L.Ed.2d 597 (1966); *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495, 510 & n.67 (3d Cir. 1978). The conduct of former Rock Springs policemen during the time they worked for the city was a matter of lively public interest at the time the Udevitz article was published. According to the article, a special investigator appointed by the Wyoming Supreme Court to probe allegations of corruption in Rock Springs was to report on the advisability of a grand jury investigation the same week the article was distributed.

## II.

### Additional Discovery

The judge concluded that Gray completely failed to meet his burden of showing defendants' article was published with malice. Given the state of the record at the time of argument on summary judgment,[4] Gray does not challenge the accuracy of these conclusions. Rather, he contends the trial court abused its discretion in failing to postpone the proceedings to permit additional discovery when asked to do so midway in the summary judgment hearing. Gray argues the court committed reversible error in ruling on the summary judgment motion before Gray had the full benefit of the court's previous extension to July 1st of the time for discovery. In particular, he notes he had a deposition scheduled for June 29th, three days after the hearing on summary judgment.

Discovery and summary judgment are separate procedures. Permitting discovery through a preset cutoff date is not a precondition to a ruling on summary judgment. If it were, the utility of the summary judgment device for short circuiting frivolous claims and those cases in which no material issue of fact exists would be frustrated. Of course, in many instances a party opposing a motion for summary judgment may need further discovery to be able to show that material issues of fact do exist. Under these circumstances, Fed.R.Civ.P. 56(f)[5] allows a party opposing a motion for summary judgment to file an affidavit explaining why he cannot present facts by affidavit justifying his opposition. The trial court then has the discretion to order a continuance to permit additional discovery.

As we have previously noted, Gray filed no affidavits or documentation supporting his opposition to defendants' motion for summary judgment, nor did he file an affidavit explaining why he could not respond with specific facts. Gray's counsel explains that he did this as a matter of "tactics," Appellant's Brief at 7, because he did not want to provide proof of malice until he first had the trial court's ruling on whether Gray was a public official. The statements we have quoted from Gray's brief in opposition to summary judgment, *supra* at 4, show a complete lack of understanding for the purpose of Rule 56 motions. Trial tactics notwithstanding, a party opposing summary judgment is required to provide "specific facts" showing there is a genuine issue for trial, or explain why he cannot immediately do so. *See* Fed.R.Civ.P. 56(e) & (f). He may not rest upon the mere allegations or denials in his pleadings or, as here, await the outcome of a legal ruling before presenting some evidence to rebut the summary judgment motion.

We recently held in *Baum v. Gillman*, 648 F.2d 1292, 1296 (10th Cir. 1981), that "Rule 56e was amended in 1963 . . . to *direct* the granting of the motion when there is a failure to respond." The trial judge did not abuse his discretion by refusing to permit additional discovery *after* the summary judgment proceedings. Gray's trial tactics backfired.

Judgment affirmed.

---

**4.** The record reflects that Gray's deposition was not on file with the court at the time of the hearing on the summary judgment motion. The original was apparently misplaced. Nor is the deposition included in the record on appeal. After oral argument on the summary judgment motion, counsel for Gray filed an affidavit asserting that Gray denied in his deposition having told the state agents he used or sold heroin or lived with a prostitute. In his written order, the trial judge correctly pointed out that even assuming the truth of this assertion, which was not properly made under Fed.R.Civ.P. 56, no genuine question of fact was raised on the issue of actual malice, because plantiff presented no evidence showing that this information was ever relayed to Udevitz.

**5.** Rule 56(f) states:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."