**Charles E. HALL and Charles E. Hall, Jr.**

v.

**Bruce ROGERS, Glenda Buell, and Providence Journal Bulletin Co.**

**82–488–Appeal.**

Supreme Court of Rhode Island.

April 12, 1985.

Daniel V. McKinnon, Stephen J. Fortunato, Jr., McKinnon & Fortunato, Pawtucket, for plaintiff.

John D. Deacon, Jr., Edwards & Angell, Providence, for defendant.

OPINION

MURRAY, Justice.

The plaintiffs in this defamation (specifically, libel) action appeal from a grant of summary judgment in favor of the defendants.[1] We affirm the entry of summary judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and therefore, the plaintiffs' appeal is denied and dismissed.

The facts relevant to this appeal are as follows. The plaintiffs, who are father and son, brought this libel action against the Providence Journal Bulletin Company (hereinafter the Journal), one of its reporters, and an East Providence City Council member, as the result of alleged defamatory publications concerning their vocations and the son's failure to be reappointed. The father, Charles E. Hall, Sr., is a sergeant on the East Providence police force.

The son, Charles E. Hall, Jr., was a special police officer for a period in 1980 and 1981.

The article in question was entitled "Special Police Exempt from Weapons Law," and it appeared on April 13, 1981 in section B of the Journal. The alleged libelous language read as follows:

"Councilman Rogers said Hall [Jr.] was not reappointed because of irregularities in the way Hall [Jr.] used his father's position as a police officer to get substantial work as a special police officer. "Hall's father is a sargeant [sic]. Regular policemen are given first shot at special details and if none of them want it, the constables are used. The council found that the Halls were 'circumventing the system,' said Rogers. The sargeant [sic] would sign up for the special detail, and the son would work it. The 20-year-old Hall made $10,000 as a special policeman last year."

The article was written by one of the Journal's reporters, Glenda Buell, who is assigned to the newspaper's East Providence office. Part of her duties included reporting on the activities of the East Providence City Council. Her source for the portion of the article in question here was Bruce Rogers, a member of the East Providence City Council and assistant mayor at the time of the publication. The Halls claim that the city council's finding of irregularities was erroneous, that the Halls did not in fact commit such irregularities, and that Ms. Buell could have detected this error by conducting an independent investigation into the accuracy of the council's findings.

The trial judge granted summary judgment for defendants on both grounds asserted by them. The first ground upon which the trial justice based his grant of summary judgment was the federal constitutional privilege pursuant to *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The sec-

1. This appeal does not involve defendant Bruce Rogers as he did not move for summary judgment below.

ond ground was the common-law privilege protecting fair and accurate reports of government proceedings.[2] The order pursuant to this decision was entered on June 8, 1982.

The general issue presented to us is whether the trial justice was correct in his conclusion that the federal constitutional privilege outlined in *New York Times Co. v. Sullivan,* was applicable to the instant factual situation. The specific issues relevant to the application of the privilege in this case is whether the trial justice was correct in finding that (1) police officers are "public officials" and (2) there were no genuine factual issues as to whether the article was published with knowledge of falsity or reckless disregard for the truth; the standard required to be met in order for public official plaintiffs to recover in a libel action. We find that the trial justice was correct in each of his conclusions articulated above.

■ The rule established in *New York Times Co. v. Sullivan,* 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706, "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Two prerequisites must be met for the *New York Times Co.* standard to apply: the plaintiff must be a public official for the purposes of the article, and the statements must relate to his official conduct. *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 273–75, 91 S.Ct. 621, 626–27, 28 L.Ed.2d 35, 42 (1971); *Garrison v. Louisiana,* 379 U.S. 64, 76–77, 85 S.Ct. 209, 216–17, 13 L.Ed.2d 125, 133 (1964); *New York Times Co. v. Sullivan,* 376 U.S. at 283 n. 23, 84 S.Ct. at 727–28 n. 23, 11 L.Ed.2d at 708 n. 23; *Gray v. Udevitz,* 656 F.2d 588, 590–91 (10th Cir.1981).

■ The police officers in the instant case are public officials for purposes of the *New York Times Co. v. Sullivan* constitutional privilege since they qualify as public officials under the test of *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

"They 'have or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs,' *id.* at 85, 86 S.Ct. at 676, [15 L.Ed.2d at 605] and their position 'has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees * * *.' " *Gray v. Udevitz,* 656 F.2d at 591 (quoting *Rosenblatt v. Baer,* 383 U.S. at 86, 86 S.Ct. at 676, 15 L.Ed.2d at 606).

The Tenth Circuit Court, in addressing the issue of inclusion of policemen within the *Rosenblatt* definition of public officials, concluded that "[t]he strong public interest in ensuring open discussion and criticism of his qualifications and job performance warrant the conclusion that he [that is, "the cop on the beat"] is a public official," *Gray v. Udevitz,* 656 F.2d at 591, since he possesses both the authority and the ability to exercise force; moreover misuse of that authority can result in significant deprivation of constitutional rights and personal freedoms, as well as bodily injury and financial loss. *Id.*

Another important factor contributing to the court's decision in *Gray v. Udevitz* is the uniformity of treatment by other state and federal courts of police officers as public officials within the meaning of *New York Times Co. See Gray v. Udevitz,* 656 F.2d at 591. Although the Court in *New York Times Co.* stated that they had "no occasion here to determine how far down into the lower ranks of government em-

---

**2.** The plaintiffs failed to address the second ground in their brief. We find that the trial justice's reliance on this ground was proper and

since plaintiffs do not raise this ground upon appeal, we shall not disturb the trial justice's findings.

ployees the 'public official' designation would extend for purposes of this rule * * *," *New York Times Co. v. Sullivan*, 376 U.S. at 283 n. 23, 84 S.Ct. at 727 n. 23, 11 L.Ed.2d at 708 n. 23, later cases as well as the spirit of the original doctrine support the classification of police officers as public officials. Thus, plaintiffs' contentions that Hall Sr.'s status as a sergeant and Hall Jr.'s status as a special police officer do not render them qualified candidates for "public official" status are respectfully without merit.

■ We agree with the trial justice that plaintiffs' joint status as police officers gave them "public official" status.[3] Therefore, the trial justice was correct in ruling that plaintiffs were required to show that defendants published the article with "actual malice" in order for them to recover. *New York Times Co. v. Sullivan*, 376 U.S. at 283, 84 S.Ct. at 727, 11 L.Ed.2d at 706.

The actual-malice standard requires that a plaintiff who is a public official has the burden of proving that defendants published the article in question with knowledge that it was false or with reckless disregard as to whether it was false or not. *Id.* at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706.

■ The trial justice determined that there was no factual issue as to whether the reporter had a high degree of awareness of the probable falsity of the article; the standard for recklessness in this context.[4] *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d

262, 267 (1968). The plaintiffs claim that the reporter had a duty to verify the information she received from her source, Bruce Rogers, and her failure to do so amounted to (at the very least) the creation of a factual issue as to recklessness. The legal authorities on point do not support plaintiffs' argument. Failure to verify information, standing alone, does not constitute recklessness. *Id.* at 733, 88 S.Ct. at 1325, 20 L.Ed.2d at 268. "As long as the sources of the libelous information appeared reliable, and the defendant had no doubts about its accuracy, the courts have held the evidence of malice insufficient to support a jury verdict, even if a more thorough investigation might have prevented the admitted error." *Ryan v. Brooks*, 634 F.2d 726, 734 (4th Cir.1980).

■ In the instant case, the source of the published information was Bruce Rogers who, at the time of publication, was assistant mayor and a member of the East Providence City Council. The record discloses that he was a reliable source. He had participated in the city council meeting at which Hall Jr.'s reappointment status had been discussed; the chief of the Journal's East Providence bureau, Peter Warren, had used Rogers as a source of information prior to publication of the article in question; Warren had always found Rogers to be reliable; Warren supervised Buell in writing the article in question; and Buell herself had used Rogers as a source prior to writing the article in question.[5] Thus,

---

**3.** The determination of whether a plaintiff is a public official is a question of law and is generally a function of the court. *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 606 (1966); *DeCarvalho v. daSilva*, R.I., 414 A.2d 806, 813 (1980).

**4.** The Halls do not contend that Glenda Buell or the Journal Bulletin had actual knowledge of any falsity in the article. Consequently, their argument must be predicated upon reckless disregard for the truth.

**5.** The plaintiffs claim that there is a discrepancy between Buell's deposition testimony and her affidavit regarding her own use of Rogers as a source prior to publication of the article in

question. Evidently, Buell could not recall at deposition using Rogers as a source *for articles* prior to April 13, 1981 (the date of the publication in issue). However, she stated that she had definitely met Rogers prior to that date, had used him since then as a source for articles, and she assumed she probably had used him *prior* to "the story" because that was what prompted her to contact him in the first place. Clearly, Buell has used Rogers as a source on numerous occasions. The fact that this usage has not necessarily occurred in connection with *articles* written prior to publication of the article in question is not controlling on the issue of Roger's reliability and Buell's dependence upon that reliability. Furthermore, the fact that the Journal's East

the circumstances, as evidenced from the record, reveal that the reporter had no reason to doubt the truth of Rogers' statements. Since Rogers was a reliable source, Buell conducted herself properly by relying on the information conveyed to her and the trial justice was correct in his determination that there was no factual dispute in regard to actual malice as defined in *New York Times Co.*

For the above reasons, we affirm the judgment of the trial justice and the plaintiffs' appeal is denied and dismissed.

Providence bureau chief had previously used Rogers as a source on a number of occasions and considered him to be a reliable source only lends support for Buell's reliance on Rogers.

The trial justice's finding that there was no factual issue of actual malice on the reporter's part should stand.