**Edmond B. McKINLEY,**
**Plaintiff-Appellee,**

v.

**Fred H. BADEN and City of Pineville,**
**Defendants-Appellants.**

No. 84–4824.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1985.

Dan E. Melichar, Alexandria, La., for defendants-appellants.

Davis & Murchison, James D. Davis, Alexandria, La., for plaintiff-appellee.

Before CLARK, Chief Judge, and THORNBERRY and EDITH HOLLAN JONES, Circuit Judges.

THORNBERRY, Circuit Judge.

Appellee Edmond McKinley, formerly a police officer with the City of Pineville, Louisiana, brought this § 1983 suit against Pineville and its mayor, Fred Baden, and a pendent defamation claim solely against Baden. After a bench trial, the district court found for McKinley on both claims and awarded $75,000 in punitive damages and $25,000 in attorney fees against Pineville and Baden jointly and severally on the § 1983 claim[1] and awarded $35,000 on the defamation claim against Baden. We reverse.

## FACTS

On January 21, 1980, Officer McKinley and three other officers arrested Sandra Zator, a thirteen year old runaway from Greenwell Springs Hospital. As Investigator Sayes and juvenile officer Clifford transported Zator back to the hospital later that day, Zator alleged that she had oral sex and intercourse with Officer McKinley in his patrol car on the night of January 14, 1980. She also peripherally implicated Officers Griffin, Murdock, Henderson, and Russell. Upon his return to the station, Sayes informed Mayor Baden of Zator's allegations. On January 23, Baden spoke to the officers one by one, and each officer denied Zator's allegations. McKinley acknowledged that Zator had been in his patrol car the night of January 14 at the location she had specified, but stated that

she had jumped into his car while stopped and got out immediately upon his demand. The district court found that Baden terminated the investigation shortly after speaking with the officers.

On May 6, 1980, Baden suspended Officer Griffin for boisterously singing "If you've got the time, we've got the beer" in the station house. Pineville is a "dry" community and Mayor Baden is a strong proponent of that status. The trial court found that Baden was incensed by the content of Griffin's refrain, not the manner in which he sang it. During Griffin's suspension, his fellow officers took up a collection on his behalf. Officer McKinley contributed about $10 to the Griffin fund.

On May 22, sixteen days after the beer jingle episode and five months after Zator's allegations, Sayes and Clifford went to Greenwell Springs Hospital and convinced Zator to give them a tape recorded statement of the allegations she had made in January. On June 2, Sayes arranged a polygraph test for Zator and Baden received the results the following day. Six days later, Baden fired Officers McKinley, Griffin, Murdock, and Henderson. The Council of Aldermen unanimously approved the mayor's action without a detailed discussion of the alleged misconduct on June 10, 1980. Baden sent McKinley and the Civil Service Board written notice of the reasons for McKinley's discharge the next day.

McKinley appealed his firing to the Pineville Civil Services Board. The vote was split 2–2, and the Board decided that the split vote upheld the action of the mayor and aldermen. McKinley then appealed to state district court. Holding that the split vote did not uphold McKinley's firing, the court reinstated McKinley with full seniority and back pay. After returning to his job in October 1980, McKinley filed his § 1983 suit and pendent defamation claim in federal court. McKinley walked off the job on

1. The court found that McKinley had been adequately compensated by the state court judgment that reinstated him with full seniority and

back pay and therefore did not award compensatory damages.

August 31, 1981, and learned upon his return the following day he no longer had a job.

Appellants argue that the trial court erred: (1) in finding that the mayor and/or the City of Pineville instituted the dismissal proceeding against McKinley in retaliation for exercise of his first amendment rights; (2) in awarding punitive damages against the City of Pineville, a municipality; (3) in finding that the mayor's dismissal charges were made with actual malice and were not privileged; and (4) in awarding excessive damages. We hold that (1) the trial court's finding that McKinley's support of Griffin was a substantial or motivating factor in his dismissal was clearly erroneous and (2) the record fails to establish with convincing clarity that Baden published the charges with malice.

### I. *McKinley's § 1983 claim*

█ To prevail on his § 1983 claim, the plaintiff bears the burden of proving that the relevant conduct is constitutionally protected and that such conduct was a substantial or motivating factor in the action taken against him. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If plaintiff carries this burden, the defendants bear this burden of showing that they would have taken the same action in the absence of the protected conduct. *Id.*

The trial court's finding that McKinley's support of Griffin was a motivating factor in Baden's institution of dismissal charges against McKinley can be set aside only if clearly erroneous. Fed.R.Civ.P. 52(a).

A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The Supreme Court recently reminded us that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). This is so even when the district court's findings are based on inferences from other facts. *Id.*

McKinley presented no direct evidence that Baden knew of his contribution to Griffin or that Baden dismissed him because of his contribution. To prove that Baden retaliated against McKinley for his association with Griffin, McKinley first had to show that Baden was aware of the association. *See, e.g., Neubauer v. City of McAllen*, 766 F.2d 1567, 1577 (5th Cir. 1985); *Hughes v. Whitmer*, 714 F.2d 1407, 1423–24 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). McKinley testified that he never discussed the beer jingle episode with Baden and that Baden never mentioned the matter to him. Officer Carpenter did testify that Sayes had told him not to contribute and that there might be trouble for those officers who did, but he also testified that Baden had never communicated a similar message to him. Even more important was Officer Griffin's testimony:

Q: Okay. Did you ever have any discussions with Mayor Baden about this beer jingle business? Did it have any connection with the later [Zator] charges brought against you?

A: No, sir.

Q: You never had any discussion with him?

A: No, sir.

In the absence of any direct evidence linking the dismissal of McKinley with his contribution to Griffin, the district court inferred that Baden knew that McKinley contributed to Griffin and that Baden fired McKinley because he contributed. Essentially, the trial court relied on five "uncontested" facts as circumstantial evidence that Baden's real reason for firing McKin-

ley was not the Zator matter.[2] To these facts, the district court added that Baden was a strong supporter of Pineville's dry status and that Griffin's performance in the station house had preceded McKinley's firing by just over a month. Then the district court posed a question to itself and readily answered:

> What, under these circumstances, would induce Baden to bring charges against McKinley on June 6, 1980? The only incident of record is Officer Griffin's singing a beer 'jingle' in the station house on May 6, 1980.

The district court's inferences that Baden knew of McKinley's contribution and fired him because of it are purely speculative.[3] Although not credited by the district court, Baden's insistence that he was not aware of McKinley's contribution was not controverted by the plaintiff's evidence and was corroborated by Sayes' testimony. Moreover, there is no other evidence in the record from which the district court could plausibly draw the inference that Baden was aware of McKinley's contribution. Because the district court's finding that McKinley's association with Griffin motivated Baden to fire him is based on an impermissible view of the evidence, we hold this finding is clearly erroneous. Therefore we reverse.

Because we dispose of McKinley's § 1983 claim on this ground, we do not reach appellants' contentions that punitive damages cannot be awarded in the absence of an actual award of compensatory damages, that punitive damages cannot be awarded against a municipality, and that the trial court's award of damages and attorney's fees with respect to the § 1983 claim was excessive.

## II. McKinley's Pendent Defamation Claim

Under Louisiana law, the elements of defamation are defamatory words, publication, falsity, malice, and resulting injury. *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La. 1980). The trial court found that in early June Baden made and published four charges against McKinley,[4] the most serious being that McKinley had engaged "in lewd and lascivious behavior, sexual intercourse and oral sexual intercourse with a female juvenile of the age of 13 years...." In addition, the trial court found that Baden's charge "destroyed" McKinley's reputation in the community and that McKinley suffered humiliation, dishonor, and embarrassment. Appellant Baden now argues that the trial court erred in finding that McKinley had proved malice and in failing to afford Baden the quasi-judicial and executive officer privileges. After reviewing the record, it is our independent judgment that the record does not establish actual malice with convincing clarity. Therefore, we reverse.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that the first amendment limits defamation actions by public officials. The *New York Times*

---

2. These "facts" were: (1) Baden closed the investigation of Zator's rape allegations on January 24, 1980; (2) Baden promoted McKinley to sergeant with an increase in pay on January 24, 1980; (3) no additional evidence on the Zator matter was sought or obtained after January 24, 1980; (4) Baden fired McKinley principally on the basis of Zator's charges on June 6, 1980; and (5) Baden did not believe Zator's allegations.

3. Appellee acknowledged the weakness of the connection between his dismissal and his support of Griffin in his post-trial memorandum:
 In short, this case boils down to the simple fact that Mayor Baden wanted to see Edmond McKinley fired from his job as a Pineville policeman because of some personal whim or *possibly* because Edmond McKinley helped Vernon Griffin after the publicity in connection with Vernon Griffin singing the Miller beer jingle. (emphasis added)

4. We assume, without deciding, that Baden's sending a copy of the charges against McKinley to the Pineville Civil Service Board on June 11, 1980 (the same day that Baden presented the charges to McKinley) was a publication. *Cf. Jones v. Wesley*, 424 So.2d 1109, 1111 (La.Ct. App.1982) (communication by executive director of local government agency to District Attorney's office that an employee had "padded" his mileage was a publication, but was privileged because director made communication in good faith, on a matter with regard to which he had a duty, to a person with a corresponding interest or duty).

rule "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. at 726. The plaintiff's proof that the defendant acted with actual malice must be "clear and convincing." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). The rationale for this constitutionally based rule is our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times*, 376 U.S. at 270, 84 S.Ct. at 721.

The trial court correctly found that McKinley was a public official and subject to the *New York Times* rule. Federal courts have consistently held police officials to be public officials for the purposes of the rule. *See, e.g., Time, Inc. v. Pape*, 401 U.S. 279, 284, 91 S.Ct. 633, 636, 28 L.Ed.2d 45 (1971); *St. Amant v. Thompson*, 390 U.S. 727, 730, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir.1981).

The Supreme Court recently announced the standard of review to be applied by an appellate court reviewing a determination of actual malice in a defamation action subject to the *New York Times* rule. The Court stated:

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502 (1984).

To establish actual malice, the plaintiff must provide clear and convincing proof that the defendant knew his publication was false or that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant, supra*, 390 U.S. at 731, 88 S.Ct. at 1325. The trial court gave four reasons for its finding that Baden published the charges with actual malice. First, the court found Zator's story incredible, one which no reasonable person would believe. The test for determining malice, however, is subjective, not objective. *St. Amant, supra*, 390 U.S. at 731, 88 S.Ct. at 1325. The critical determination is whether Baden in fact believed Zator. The trial court's finding that a reasonable person would not have believed Zator sheds little light on this issue.

Second, the court found that Baden's terminating the investigation in January indicated he did not believe Zator. The evidence going to whether Baden called off the investigation is controverted. McKinley testified that Baden told him there was no foundation for the charges and that he should carry on his normal duties. Officer Griffin testified that he heard nothing of the charges from January until May. Officer Russell, who was not dismissed in June, testified that Baden had told him he was "clear," but that Baden didn't tell him the other officers were "cleared." Baden testified that he did not terminate the investigation in January, but rather informed McKinley that unless he received more information there was probably no reason for McKinley to worry. Sayes, the officer who investigated the charges, testified that the investigation was not closed and that he had tried to persuade Zator to give a tape-recorded statement three times between February and May.

The third factor that the court found to indicate actual malice was Baden's "promoting" McKinley to sergeant on February 1. In fact, McKinley had probationary sergeant status since passing the sergeant's civil service exam the year before, and Baden merely confirmed McKinley in that rank on February 1. At that time, Baden had neither Zator's recorded statement nor her polygraph test results.

The fourth factor that influenced the trial court's finding of actual malice was an excerpt from Baden's testimony at the Civil Service trial.

Q: Are you saying that you don't know whether Sandra Zator is telling the truth or not?

A: Oh, I tell you what, I think she's telling a fragment of the truth—I sure do—because it locked in too much with what he said.

Q: A fragment of the truth is what you said?

A: That's right—I couldn't say everything she's saying is the truth—I don't know her purpose and intent—I don't know Ed's—I don't know yours.

One plausible interpretation of this testimony is that Baden did not believe much of Zator's story. Another plausible interpretation is that he did not believe *all* of Zator's allegations against the five officers, but he did believe some of it. Under this interpretation, Baden indicated the allegations he believed involved McKinley "because it locked in too much with what he said."

There are other factors in the record which did not give the trial court pause in making its finding that Baden had published the charges with actual malice. On May 22, Baden had received Zator's tape-recorded statement documenting her allegations. Also in late May, Baden had received Zator's polygraph test results that indicated she was telling the truth. Baden testified that both of these factors weighed heavily in his decision to dismiss McKinley.

█ We have recently repeated the established principle that "[a] reviewing court should respect credibility choices made by the fact finder." *Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 388 (5th Cir.1985). The *Bose* Court noted that "the constitutionally-based rule of independent review permits [the trial judge's opportunity to observe the demeanor of the witnesses] to be given its due." 104 S.Ct. at 1959. The trial court thought McKinley credible and Baden not. We do not disturb its credibility choice. After our independent review of the record, however, it is our judgment that the record fails to establish malice with "convincing clarity." *Bose, supra*, 104 S.Ct. at 1967. We therefore reverse. Because we dispose of McKinley's defamation claim on this ground, we do not reach the privilege defenses asserted by Baden.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment on the § 1983 and defamation claims.

REVERSED.

EDITH H. JONES, Circuit Judge, concurring:

I concur specially in the Court's decision. This Court does not have occasion to pass upon the simple truth or untruth of the allegations on which Sergeant McKinley was fired. Our duty, as aptly noted in the majority opinion, is to review whether there was sufficient support in the trial court record to justify finding (a) a connection between McKinley's termination and his assertion of a constitutional right and (b) "actual malice" on the part of the mayor. I agree with the majority's conclusion as to both of these critical issues. However, I, for one, am convinced that Baden approved the filing of charges against Sergeant McKinley on very flimsy evidence. Three of the four charges against him were essentially abandoned by the city at the Civil Service Commission level as having virtually no support. The most serious and damaging charge found its substantiation only in the statements of an unfortunate young girl characterized by the Greenwell Springs Hospital psychiatrist responsible for her case as smart, self-destructive, manipulative, promiscuous, angry, hostile, and possibly vengeful due to her inability to adjust to adolescence and her overweening desire to be adopted. Mayor Baden conceded that he did not know about her personality problems when he approved the charge that McKinley had lewd and lascivious relations with Zator. Baden did not know that only a few months before the January runaway episode, Zator has been hanging around in Pineville, homeless, and McKinley and his wife had let her spend a day at their house. They became sympathetic with her to the point of inquiring about her background through a relative and social caseworker, with a view toward adoption. They rejected this possibility be-

cause of various antisocial characteristics Zator displayed even on short association. Zator was at that time delivered back to Greenwell. In January, according to one woman with whom Zator had temporarily stayed upon returning to Pineville. Zator stated that if any of the local police officers arrested her, she would "do anything to get them in trouble." As she was arrested on January 21, Zator attacked McKinley, yelling at him, "I'll get you, McKinley." The mayor knew none of these things when he approved the institution of charges against McKinley, because no thorough investigation had been made.[1] Mayor Baden may not have acted with malice against McKinley, but he certainly failed to exhaust the investigative possibilities prior to landing a potent blow to McKinley's reputation, family life and professional standing in this small community.

---

**1.** As noted in the majority opinion, the Pineville Civil Service Commission split their votes on the persuasiveness of the charges, and the Louisiana State Court, reviewing the dismissal only four months after it occurred, found that McKinley could not be dismissed solely based on the "questionable, uncorroborated testimony [of Zator] that has been contradicted and impeached in several respects."