Kenneth T. LYONS et al.

v.

**RHODE ISLAND PUBLIC EMPLOY-
EES COUNCIL 94 et al.**

No. 88–214–Appeal.

Supreme Court of Rhode Island.

May 11, 1989.

John R. Murray, Baluch, Mahoney & Gianfrancesco, Joseph A. Kelly, Carroll, Kelly & Murphy, Providence, for plaintiffs.

Milton Stanzler, Cerilli, McGuirl, Hustwit & Bicki, Providence, Richard Kirschner, Kirschner, Weinberg & Dempsey, David E. Kendall, William K. Layman, Williams & Connolly, Washington, D.C., for defendants.

## OPINION

FAY, Chief Justice.

This Superior Court action for libel returns to us following a remand to the Superior Court for a new trial.[1] In the second trial, the jury returned a verdict for the plaintiffs. The defendants now appeal from the denial of their motions for a new trial or, in the alternative, for a remittitur. Additionally, the plaintiffs' cross-appeal alleging that the trial justice committed error in denying their motion to file a third amended complaint.

The plaintiffs, National Association of Government Employees, Inc. (NAGE), and its president, Kenneth T. Lyons (Lyons), brought this libel action after defendants, American Federation of State, County, and Municipal Employees (AFSCME), Rhode Is-

---

**1.** In the first trial the jury returned a verdict for the defendants. The trial justice, however, died prior to hearing the plaintiffs' motion for a directed verdict. Thereafter a successor justice was appointed pursuant to Rule 63 of the Superior Court Rules of Civil Procedure. The sec- ond trial justice heard and denied the plaintiffs' motion for a new trial. Following the plaintiffs' appeal to this court of the trial justice's ruling, we allowed the motion and vacated the trial court judgment. *Lyons v. Rhode Island Public Employees Council 94,* 516 A.2d 1339 (R.I.1986).

land Public Employees Council 94 (council 94), and local No. 911, allegedly distributed reprints of a 1972 Jack Anderson syndicated column. Specifically the action was filed against the president and the secretary/treasurer of AFSCME, council 94, and the president and the secretary/treasurer of local No. 911. Council 94 is the council for the State of Rhode Island Public Employees affiliated with AFSCME, and local No. 911, an AFSCME affiliate, represents the Newport city employees. The distribution of the article, according to plaintiffs, occurred during labor-election campaigns in 1975–76 between AFSCME and NAGE for the right to be the collective-bargaining agent for employees at the Rhode Island Medical Center, the University of Rhode Island (URI), and the city of Newport.

The Anderson column was originally published on October 31, 1972, and entitled "The Investigation." The article focused on the 1972 presidential election between Richard Nixon and George McGovern. Anticipating McGovern's defeat, the column noted that Democratic hopefuls would be vying for important positions "in the 1976 Presidential sweepstakes."

Specifically the article discussed NAGE's president, Kenneth T. Lyons, and indicated that he was under "double-barreled federal investigation" by the Department of Justice for alleged perjury in a Mafia-related case and by the Department of Labor for alleged misuse of union funds. The column highlighted the relationship between Lyons and Nixon and stated that the President had appointed Lyons to the prestigious White House advisory council. The column also described Lyons as "one of President Nixon's favorite labor leaders" and "an officer of Democrats for Nixon."

The column indicated that Lyons's trouble with the Justice Department began with alleged ties to a detergent product "linked to an underworld family with a record for strong-arm business tactics." According to the column, testimony before a Senate committee established that Lyons had agreed to distribute the detergent. Following this testimony, Lyons demanded to testify before the committee. Lyons,

appearing without counsel, denied all the allegations. The article continued stating that the Senate record was replete with contradictions and led to the Justice Department's investigation for perjury. Finally the column noted that the charge of misuse of union funds by the Labor Department evolved from a complaint initiated by union dissidents.

Two reprints of the Anderson article were allegedly disseminated by defendants in 1975 and 1976. The first reprint was an exact photocopy of the article with "New York Post, October 31, 1972," printed in the top right-hand corner of the page. These words were added above the line in a different print from that in the article. In the second reprint a black line surrounded the entire column, the words "EXPOSE, Jack Anderson Looks at NAGE" were placed in a bold, black headline, and several phrases were underscored in black. Underlined phrases included "Lyons's alleged misuse of union funds" and "one of their lunch and dinner companions * * * was Tony Camerota * * * 'godfather.'" We shall refer to the photostat reprint of the column as the Anderson reprint and to the reprint with additions as the EXPOSE reprint.

The plaintiffs alleged in the complaint that defendants "knowingly, falsely, and maliciously, in reckless disregard for the truth" printed, published, and distributed the EXPOSE and Anderson reprints to the general public and to employees of the Medical Center, URI, and the city of Newport. In addition, plaintiffs averred that the reprints were intended to convey, and did convey, that plaintiffs "were associated with the Mafia, a national-crime organization, and that [Lyons] had misused funds and committed perjury before a Senate committee." Further, plaintiffs alleged that defendants had failed to investigate the facts asserted before publishing the reprints and knew or should have known that the investigations by the Justice Department and the Labor Department had been concluded. As a consequence of defendants' actions, plaintiffs maintain that the republications injured plaintiff NAGE as a labor organization and plaintiff Lyons

"in his profession as a labor leader and in his individual personal standing and reputation as a leading citizen."

At trial plaintiffs and defendants stipulated to the fact that the investigations by the Justice Department and the Labor Department ended in December 1972 and that no charges against Lyons resulted from those hearings. In addition, the parties agreed that plaintiffs were public figures for purposes of this libel action. Conflicting evidence was presented at trial regarding which of the reprints had been distributed, by whom, and during which campaign. The evidence was also contradictory on defendants' knowledge of the alleged falsity of the reprints.

On behalf of plaintiffs, Lyons testified that he traveled to Washington, D.C., to appear before the Senate subcommittee following allegations of impropriety. He admitted that the Anderson article was true on the date of publication, October 31, 1972, but stated that the reprints were inaccurate at the time of distribution. Lyons also noted that he constantly received telephone calls at work and at home regarding his alleged affiliation with the Mafia. Following the appearance of the reprints, Lyons testified that the publication had a terrible effect on his physical and mental well-being. He also stated that the reason defendants distributed the article was to destroy him and NAGE. Mrs. Lyons corroborated his testimony concerning the column's effect on her husband.

Warren Olson, an AFSCME representative, gave testimony concerning the election at the Rhode Island Medical Center. He stated that he had seen the Anderson reprint and distributed the article at the medical center. Olson, however, noted that he had not seen the EXPOSE reprint. Olson related that he had made several thousand reproductions of the Anderson reprint and added, "We told everyone to get one."

Before disseminating the reprint, Olson testified that he did not investigate or compile any information concerning the outcome of the investigations. Olson stated, however, that he had no idea that the article was false and based his confidence in the truth of the publication on Jack Anderson, a reliable source. In addition he noted that the article was distributed for informational purposes only.

Harry Breen, national executive secretary of NAGE, contradicted Olson's testimony. During the election campaign, Harry Breen stated that he observed AFSCME employees John Breen (no relation to Harry) and Warren Olson distributing the EXPOSE reprint at the medical center. Harry Breen testified that when he asked John Breen, a former NAGE employee, and Warren Olson why they were disseminating the article when they knew it was a lie, they responded, "We know it is a lie but the employees don't know it's a lie."

John Breen and Warren Olson, however, denied ever having the above conversation with Harry Breen. John Breen admitted having seen the Anderson reprint in 1972, when he was employed by NAGE, and acknowledged that he was aware that the investigations had ended. Warren Olson stated that he had no knowledge of the truth or falsity of the article and never discussed that topic with John Breen.

Conflicting testimony was also presented in regard to the distribution of reprints at URI. Warren Olson testified that he did not remember if the article was disseminated at the university. Alternatively Harry Breen again testified that Warren Olson and John Breen distributed the EXPOSE reprint. John Breen flatly denied the allegation. Robert DiRamio of NAGE testified, stating that he was assigned by Harry Breen to concentrate on the election at URI during April and May of 1976. He admitted not seeing the reprints at URI and stated that, to his knowledge, Harry Breen was not present at the university.

In regard to the Newport election, J. Howard Duffy testified through deposition that he participated in the election by mailing leaflets to union members and by sending campaign literature. He acknowledged that the leaflet dated September 15, 1976, on Rhode Island Public Employees Council 70 letterhead to the members of local No. 911 included a reprint. The words "be sure and read the Jack Anderson pamphlet"

were included at the end of the cover letter, according to Duffy.

Duffy also testified that he had no knowledge of whether the investigation was ongoing at the time he authorized the mailing and believed that the reprint conveyed important information to voters in the election. He noted that he failed to investigate because "Jack Anderson is reputed to be one of the most competent newspapermen in the country." Duffy stated that the reprint was obtained from Warren Olson, who substantiated this assertion.

The defendants presented testimony from Elizabeth Gilmore, Patrick Berrigan, and Yvonne Smith. Gilmore, a retired city of Newport employee and member of local No. 911, recalled the election between AFSCME and NAGE. She stated that the article had no effect on her decision in the election, maintaining that, "[j]ust because someone says something it does not mean it's true." Berrigan, a maintenance employee for the State of Rhode Island, stated that he remembered the election and had seen the Anderson reprint but not the EXPOSE reprint. Newport city employee and former member of local No. 911, Yvonne Smith, testified that she did not remember receiving a letter containing the Jack Anderson article.

The AFSCME acknowledged receipt of a March 9, 1976 letter from attorneys representing NAGE, prior to the URI and Newport elections. The letter was addressed to the AFSCME president, Jerry Wurf, and informed him that the republication of the column constituted libel because the investigations discussed in the Anderson article had concluded favorably to NAGE and Lyons. The attorneys suggested in the letter that AFSCME stop distributing the column because of its false and defamatory nature.

In addition AFSCME admitted receiving a second letter sent on May 21, 1976, from a NAGE attorney advising AFSCME's general counsel that the EXPOSE column had been distributed or posted on bulletin boards in Newport on May 18, 1976, by AFSCME agents. The letters were allowed into evidence at trial only to show notice to defendants of plaintiffs' claims.

Donald S. Wasserman, assistant to the president for Collective Bargaining Services, in reply to the letters stated at trial that he sent a handwritten memorandum to members of his immediate staff, directing them not to send out the Jack Anderson article. After receiving the second letter of May 21, 1976, Wasserman testified that he failed to act because he had already addressed the issue by sending the memorandum. Following the letters, Wasserman stated that no requests for information on Lyons and NAGE were made.

At the end of the presentation of evidence, defendants moved for a directed verdict. The trial justice reserved judgment, finding that the case should go to the jury because of the serious issues involving credibility and other findings of fact. Then the trial justice instructed the jury and provided it with special interrogatories to determine the liability, if any, of each defendant to either plaintiff.

The jury found defendant Rhode Island Public Employees Council 94 liable to Lyons for $50,000 compensatory damages and to NAGE for $25,000 compensatory and $150,000 punitive damages. Liability of AFSCME was established in the amount of $225,000 compensatory damages to Lyons and $225,000 compensatory and $600,000 punitive damages to NAGE. No liability was found on the part of local No. 911.

The defendants then brought motions for a remittitur or for a new trial on the ground that the verdict was contrary to the law and the weight of the evidence. The trial justice rejected the motion for a directed verdict, finding that plaintiffs had established proof in this case. The defendants now claim error in the denial of the motions.

We discussed the elements of an action in defamation when this case first came before this court. *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339 (R.I.1986). An action in libel requires "(a) a false and defamatory statement concerning another; (b) an unprivileged publi-

cation to a third party; (c) fault amounting at least to negligence on the part of the publisher." *Id.* at 1342 (quoting Restatement (Second) *Torts* § 558 (1977)). We also stated in *Lyons* that: " '[a]ny words, if false and malicious, imputing conduct which injuriously affects a man's reputation, or which tends to degrade him in society or bring him into public hatred and contempt are in their nature *defamatory.* '" 516 A.2d at 1343 (quoting *Elias v. Youngken,* 493 A.2d 158, 161 (R.I.1985)). We finally noted that actionable libel can be constituted by written or printed signs or descriptions. *Lyons,* 516 A. at 1343 (discussing *Henry v. Cherry & Webb,* 30 R.I. 13, 18, 73 A. 97, 99 (1909)).

In determining whether a statement is false and defamatory, we must give the words their ordinary meaning in the community, *J.A. & R.A. Reid v. Providence Journal Co.,* 20 R.I. 120, 37 A. 637 (1897), and not isolate them from the circumstances in which they were published. *Della Posta v. Rand Express Freight Lines, Inc.,* 86 R.I. 148, 133 A.2d 775 (1957). The words also must be reviewed in the context of the publication in which they appear taken as a whole. *Bray v. Providence Journal Co.,* 101 R.I. 111, 220 A.2d 531 (1966).

If, as stipulated here, a public official or public figure brings a defamation action, it is constitutionally required that he prove by clear and convincing evidence that the particular falsehood alleged was asserted with actual malice. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *DeCarvalho v. daSilva,* 414 A.2d 806, 812 (R.I.1980). The clear and convincing evidence standard to prove actual malice has been defined as "intermediate between the normal 'preponderance of the evidence' civil standard and the 'beyond a reasonable doubt' criminal standard." *Loeb v. New Times Communica-*

*tions Corp.,* 497 F.Supp. 85, 92 n. 11 (S.D. N.Y.1980). Actual malice can be demonstrated by establishing that a publisher knew of its falsity or acted in reckless disregard of whether it was false. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[2] This burden of proof is on the public-figure plaintiff. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 775, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783, 792 (1986).

In finding whether "clear and convincing" evidence of "actual malice" exists, we must independently examine the whole record. *New York Times Co. v. Sullivan,* 376 U.S. at 285, 84 S.Ct. at 729, 11 L.Ed.2d at 709. The usual "clearly erroneous" standard of appellate review is not applicable, so we must examine mixed findings of fact and law to determine the issue of actual malice. The United States Supreme Court has explained the variation of de novo review from the policy of deference to the trial fact-finder as follows:

"[T]he Court has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression would not be inhibited. Providing triers of fact with a general description of the type of communication whose content is unworthy of protection has not, in and of itself, served sufficiently to narrow the category, nor served to eliminate the danger that decisions by triers of fact may inhibit the expression of protected ideas." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 505, 104 S. Ct.1949, 1962, 80 L. Ed. 2d 502, 519–20 (1984).

**2.** We have frequently applied the actual malice rule. *See Major v. Drapeau,* 507 A.2d 938, 941 (R.I.1986) (for public figure to recover for defamation "reckless disregard" is more than mere negligence); *Martin v. Wilson Publishing Co.,* 497 A.2d 322, 330 (R.I.1985) ("actual malice" test of United States Supreme Court's *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710,

11 L.Ed.2d 686 (1964) decision used to ascertain truth of underlying defamatory statements); *Hall v. Rogers,* 490 A.2d 502, 505 (R.I.1985) (failure to verify information alone, does not constitute "recklessness" for purposes of establishing "actual malice"); *Hawkins v. Oden,* 459 A.2d 481, 484–85 (R.I.1983) (*New York Times* test applied to defamation action).

This duty of independently reviewing the entire record stems from the importance of preserving the liberties of the First Amendment to the United States Constitution. *Id.* We now exercise our independent appellate review of the evidence presented at trial.

In order for us to uphold the verdict, the record must independently support the assertion that the alleged defamatory material contains a false and defamatory statement of fact. In addition clear and convincing evidence must exist to establish that the false and defamatory statement of fact was published with actual malice.

We have previously observed that the facts as reported by Jack Anderson were true when the article was first published on October 31, 1972. *Lyons,* 516 A.2d at 1344–45. Kenneth Lyons was under investigation for alleged perjury by the Justice Department. The Labor Department was also "looking into" misuse of union funds by Lyons and NAGE.

The reprints were also accurately dated. The EXPOSE and Anderson reprints contained the date of publication above the text. The type used to display the date was larger than the text print in both reprints. The style was also different from the type utilized in the original column. In the EXPOSE reprint the date was placed directly next to the article's heading.

Aside from the fact that the original article was dated and accurate, the text referred to Richard Nixon as President of the United States. We said in *Bray* that publications must be considered in their entirety in determining whether they are false and defamatory. The majority of the original column was devoted to a discussion of the upcoming 1972 presidential election between Nixon and McGovern. These historical references indicate that the reprints referred to prior events and not to matters occurring in 1975 and 1976.

We have repeatedly stated that we shall not isolate words from the circumstances in which they were spoken. The Jack Anderson column was republished during a heated labor-election campaign. The important constitutional concerns regarding free speech are greatest when a publication is political and is distributed during an election. *See Ocala Star–Banner Co. v. Damron,* 401 U.S. 295, 300–01, 91 S.Ct. 628, 632, 28 L.Ed.2d 57, 62 (1971) (speech protected during campaign or election); *Mills v. Alabama,* 384 U.S. 214, 218–19, 86 S.Ct. 1434, 1436–37, 16 L.Ed.2d 484, 487–88 (1966) (political publication protected because of First Amendment concerns).

■ Reading these reprints in their historical context, noting the insertion of the October 31, 1972 date, and realizing that the reprints were republished during heated labor elections, we find that the jury is prevented from concluding that the article was false and defamatory. Therefore, we find that the EXPOSE and Anderson reprints did not contain a false and defamatory statement of fact.

In considering whether the alleged falsehood was asserted with actual malice, we review whether the disseminator of the article knew of its falsity or acted in reckless disregard of the truth. Actual malice defined is "a term of art" established as a standard of liability necessary for a state to constitutionally allow public-figure plaintiffs to recover damages in libel actions against publishers. *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 251, 95 S.Ct. 465, 470, 42 L.Ed.2d 419, 426 (1974).

■ According to the trial testimony of J. Howard Duffy and Warren Olson, they believed that the information in the column was relevant and important for voters at the medical center, URI, and Newport in choosing a collective-bargaining representative. Olson specifically testified that the reprints were disseminated for informational purposes. Similarly, Duffy noted that "I felt that it was important for the union members to read every word that was in the article." Donald Wasserman believed that the reprints contained valid information relevant to the election.

These individuals also testified that they did not know or suspect that the reprints were false. Olson added that he had accepted the article as truthful because of the credibility of Jack Anderson as a syndicated columnist. Duffy declared that

"Jack Anderson is reputed to be one of the most competent newspapermen in the country." Wasserman informed his staff to stop distribution of the article immediately, after receiving a letter from NAGE's attorneys. He noted, however, that the October 31st column was accurate even after realizing the investigations had been closed.

Participants involved in a campaign anticipate that charges and countercharges will be asserted during the course of an election. Elizabeth Gilmore's comment that "[j]ust because someone says something does not mean it's true" emphasizes this point. In the context of a labor election, the evidence presented at trial does not establish actual malice.

The plaintiffs would like us to rely on Harry Breen's testimony and John Breen's knowledge that the investigations had terminated favorably for plaintiffs. Although John Breen was aware that the investigations were over when the reprints were distributed, he testified that he never handed out any reprints. In addition John Breen stated that he never discussed with Warren Olson or any other AFSCME personnel the fact that the investigations had ended. Therefore, we find that no clear and convincing evidence exists to establish that defendants distributed the reprints with knowledge of or reckless disregard for their falsity.

In reaching the above conclusion, we are cognizant of the fact that the defendants could have provided additional information in disseminating the reprints. We have held, however, that "[a]s long as the sources of the libelous information appeared reliable, and the defendant had no doubts about its accuracy, the courts have held the evidence of malice insufficient to support a jury verdict, even if a more thorough investigation might have prevented the admitted error." *Hall v. Rogers*, 490 A.2d 502, 505 (R.I.1985) (quoting *Ryan v. Brooks*, 634 F.2d 726, 734 (4th Cir.1980)). Here the columns were republished in their entirety. Additional information suggesting that the investigation was ongoing was lacking. The date of publication was affirmatively added for clarification. Finally,

the trial transcript suggests that the dissemination of the reprints, while attempting to influence the election, was accomplished without any knowledge of falsity or reckless disregard for the truth.

The plaintiffs also cross-appeal from the denial of their motion to file a third amended complaint. We recently held that the final decision whether to allow an amendment of a complaint under Rule 15 is in the discretion of the trial justice. *Order of St. Benedict v. Gordon*, 417 A.2d 881, 883 (R.I.1980). We believe that the trial justice was correct in denying the plaintiffs' motion to amend. Therefore, the plaintiffs' cross-appeal is denied.

After exercising independent review, we find that the quantum of proof advanced to establish libel falls short of clear and convincing evidence of actual malice. Hence, no new trial is permissible. The trial justice's denial of the plaintiffs' motion to amend is affirmed, and the case is remanded to the Superior Court with direction to enter judgment for the defendants.