[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on appeal from a decision of the Department of Human Services (DHS). The plaintiff seeks reversal of the administrative disqualification hearing officers' decision finding her in violation of the Food Stamp Regulations. Jurisdiction in this Court is pursuant to Rhode Island GeneralLaws 1956 (1988 Reenactment) § 42-35-15.
The travel and history of this case is essentially as follows. On August 5, 1986, the plaintiff filed an application for assistance with DHS seeking food stamps and medical assistance. Subsequently, on May 19 and November 24, of 1987, the plaintiff filed applications for continued receipt of benefits. Plaintiff sought these benefits on behalf of the household which consisted of her three minor children, and her parents, Olive Alexander (a/k/a Olive Whitford), and Lawrence Whitford. The application forms specifically requested the plaintiff to list her own, her spouse's, and her children's bank accounts and any other resources.
In February of 1988, the plaintiff was cited for an intentional program violation and an administrative hearing was scheduled for November 15, 1989. Specifically, DHS alleged that the plaintiff had intentionally withheld or misrepresented information pertaining to a bank account held solely in her mother's maiden name. However, a question remains as to whether or not the applications specifically requested that the plaintiff disclose her parents resources and assets. The defendant claims that on several occasions the agency orally requested that the plaintiff provide any information pertaining to her parents' resources and income. Apparently in June of 1987, the agency requested the plaintiff's parents to come to the office to sign forms used to obtain verifications for any bank accounts held in the state. The plaintiff claims that she had previously listed her mother's name on the applications as "Olive Alexander" and thereafter the agency incorrectly listed the name of "Olive Whitford" on the verification forms which were signed "Olive Whitford". These forms were returned by the bank showing no record of any accounts. Subsequently, in January of 1988, DHS was notified by the Internal Revenue Service that Olive Alexander was receiving substantial interest income. During this same month, the plaintiff's mother returned to the agency to sign another verification form as "Olive Alexander". The verification disclosed a checking account held solely in the plaintiff mother's maiden name for $8,678.86, opened in March 24, 1986.
Sometime prior to the scheduling of the administrative hearing, a letter was sent to the hearing officer from the Attorney General's office (Welfare Fraud Unit) advising the hearing officer that ". . . a violation could not be proven beyond a reasonable doubt . . . the documents necessary to meet this burden of proof either did not exist or could not be obtained [and] do not warrant prosecution through the appropriate court system . . ." A hearing was held on November 15, 1989, which the plaintiff was unable to attend. The hearing officer determined that the plaintiff withheld or concealed information to obtain food stamp benefits under Section 15-III of the Food Stamp Program Policy Manual outlined below. In relevant part, the criteria for determining an intentional program violation is as follows:
 The hearing authority shall base the determination of intentional program violation on clear and convincing evidence which demonstrates that the household member(s) committed and intended to commit, intentional program violation as defined below:
 Made a false or misleading statement, or misrepresented, concealed or withheld facts; or,
 Committed any act that constitutes a violation of the Food Stamp Act, the Food Stamp Program regulations, or any State statute relating to the use, presentation, transfer, acquisition, receipt, or possession of food stamp coupons or ATP cards.
In April of 1990, this Court granted plaintiff's motion requesting permission to present additional evidence before the department bearing on her state of mind. The only additional evidence presented was the following question asked of the plaintiff and her answer:
 Q. Um, with respect to knowledge, state of mind, were there any intent on your part to conceal any income from DHS that was associated with your household?
 A. No.
Pursuant to this testimony, the hearing officer upheld his earlier decision and concluded that the above "uncontradicted" testimony was not "of sufficient weight nor quality to overcome the clear and convincing evidence" presented at the earlier hearing. The only evidence relied upon in arriving at this earlier decision consisted of the three applications for assistance, completed and signed by the plaintiff, the testimony of department workers that the plaintiff did not list her mother's bank accounts on the "assets" section of the application, and the bank verifications which documented that the plaintiff's mother held a bank account of over $8,000 for the time in which the household received food stamps.
Review of an administrative agency decision in the Superior Court is governed by Rhode Island General Law 1956 (1988 Reenactment) § 42-35-15(g) which provides in part:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The scope of this court's review of administrative agency decisions is limited by the Administrative Procedures Act, §42-35-15(g). "The court may not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact." Carmody v.Rhode Island Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986); Guarino v. Department of Social Welfare,410 A.2d 425 (R.I. 1980). However, this court "may freely review questions of law to determine what the law is and its applicability to the facts." Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989);Carmody, 509 A.2d at 458.
According to Federal and State regulations, individuals found to have committed intentional program violations are ineligible to participate in the food stamp program for six months for the first violation. 7 C.F.R. § 2015(b)(1); DHS Food Stamp Program Policy Manual § FSP-15-II. The criteria of DHS for determining an intentional violation is consistent with and founded upon 7 C.F.R. § 2015(b). The plaintiff agrees that the evidence shows that she did not report her mother's bank account and the balance in that account exceeds the food stamp limits. However, the plaintiff argues that the agency did not meet their burden of proving by "clear and convincing" evidence that her failure to report such household income was intentional. Instead, she argues that she had no knowledge of the existing bank account and non-disclosure was due to her lack of knowledge and thus an innocent failure to report the account. DHS relies upon the certification which the plaintiff was advised of and signed on all applications advising her of her duty to provide truthful information and to advise the agency of any changes in household circumstances, income or resources. The only other evidence consists of the testimony of department workers that they had advised the plaintiff of her rights and responsibilities and that she had not disclosed her mother's account.
In the Carmody case, our Supreme Court adopted the standard in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 618 (1985) to determine whether a violation of the conflict of interest law was "knowing and willful", thus justifying civil penalties. The Supreme Court in Trans World Airlines concluded that only when the violative conduct indicates that the employer either knew or showed reckless disregard for conduct that was prohibited by statute, and the employer knew that the statute was "in the picture", then punitive damages would be warranted.Carmody at 460. However, punitive damages would be inappropriate in instances in which a violation was committed by an employer who had acted reasonably and in good faith. Id.
Moreover, in a recent case dealing with essentially the same circumstances presented to this court, a Florida Appellate court held that "mere failure to report income does not establish by clear and convincing evidence that there was intent to commit an intentional program violation." Smith v. Dept. of Health andRehabilitative Services, 522 So.2d 956, 963 (Fla. App. 1988). In the Smith case, the department presented only documentary evidence which was insufficient to meet their heavy burden. In contrast, in the case of the State of Minnesota v. Stender,354 N.W.2d 890 (Minn. App. 1984), the court upheld a criminal conviction for a food stamps theft violation when the defendant failed to report a joint bank account held with her ex-husband. There the court held that intent may be proved by circumstantial evidence. Id. The Stender case is distinguishable because a joint bank account constitutes a strong presumption of ownership. Here, the plaintiff did not hold a joint account with her mother. Instead, the account was held solely in her mother's maiden name and opened prior to the plaintiff's move to her parent's home. The plaintiff's failure to report her mother's bank account constitutes an innocent failure to disclose due to a lack of knowledge.
Although the issue of whether or not the plaintiff intentionally committed a program violation is a question of fact, the clear and convincing standard and the intent element are initially questions of law which this court may freely determine and apply to the facts presented. This court is not satisfied that the agency has here met its burden to prove by clear and convincing evidence that the plaintiff intentionally "made a false or misleading statement, or misrepresented, concealed or withheld facts." "Clear and convincing evidence" is defined as "intermediate between the normal `preponderance of the evidence' civil standard and the `beyond a reasonable doubt' criminal standard." Lyons v. Public Employees Council 94,559 A.2d 130, 134 (R.I. 1989), quoting, Loeb v. New TimesCommunications Corp., 497 F. Supp. 85, 92 N. 11 (S.D.N.Y. 1980). In reviewing the whole record, the agency's decision to violate plaintiff is clearly erroneous in view of the reliable, probative, and substantial evidence. The hearing officer's determination lacks the substantial evidence foundation necessary to a finding of an intentional violation. The evidence presented does not establish by clear and convincing evidence that the plaintiff intentionally failed to disclose the existence of her mother's bank account or that she was even aware of the existence of the account.
For the reasons hereinabove set forth and after a careful review of the whole record, this Court finds that the department's decision is clearly erroneous and lacks the necessary support of substantial evidence. The department's decision is reversed.