DECISION
This matter came before the Court for a jury-waived trial held between March 25 and April 15, 2008. The plaintiff, Amicable Congregational Church ("the Church"), is the record-title owner of a certain 26.347 acre parcel of land in the town of Tiverton, bordering the eastern side of South Lake Road and described in the Tiverton Tax Assessor Map at Map 4-2, Block 127, Card 8. The defendant, Richard K. St. Aubin ("St. Aubin"), a resident of the town of Little Compton, is the owner of three parcels of land abutting the northerly portion of the Church's land. All parcels are wooded, remaining largely in their natural state.
The Church filed the instant suit on March 9, 2007, alleging,inter alia, that St. Aubin had been trespassing on its land, placing markers and other objects indicating ownership of the land, and that he or his agents had "done significant destruction" to trees and underbrush. (Pl.'s Compl. at 2-3.) St. Aubin counterclaimed, alleging,inter alia, that he is the fee simple owner of the disputed property under the doctrine of adverse possession.[1] This Court now decides whether St. Aubin has satisfied the elements of adverse possession. Jurisdiction is pursuant to G.L. 1956 § 8-2-14. *Page 2 
 I Rule 52 Standard
Rule 52(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that "in all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon. . . ." As a non-jury trial, resolution of the instant dispute requires the trial justice to sit "as trier of fact as well as law," to weigh and consider the evidence, to determine the credibility of witnesses, and to draw inferences from the evidence presented. Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984); see alsoRodriques v. Santos, 466 A.2d 306, 312 (R.I. 1983) (holding that the question of who is to be believed is one for the trier of fact). Rule 52(a) does not necessitate "`extensive analysis and discussion of all the evidence'"; rather, "`brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case.'" Donnelly v. Cowsill, 716 A.2d 742, 747 (R.I. 1998) (quoting Anderson v. Town of E. Greenwich, 460 A.2d 420, 423 (R.I. 1983)).
 II Adverse Possession
The Rhode Island General Laws provide for adverse possession at § 34-7-1:
 Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action. *Page 3 
The Rhode Island Supreme Court has held that to establish adverse possession, a claimant's possession must be "`actual, open, notorious, hostile, under a claim of right, continuous, and exclusive' for at least ten years." Carrozza v. Carrozza, 944 A.2d 161, 166 (R.I. 2008) (quotingAcampora v. Pearson, 899 A.2d 459, 466 (R.I. 2006)). The burden is on the claimant to establish each of these elements by clear and convincing evidence: a standard more exacting than the "preponderance of the evidence" standard normally associated with civil trials, but short of the "beyond a reasonable doubt" standard required in criminal matters.Acampora, 899 A.2d at 466; see also Lyons v. R.I. Pub. Employees Council94, 559 A.2d 130, 134 (R.I. 1989).
Based upon the following findings of fact and conclusions of law, this Court finds that St. Aubin has not established, by clear and convincing evidence, that he possessed the disputed property in a manner "actual, open, notorious, hostile, under a claim of right, continuous, and exclusive" for the requisite ten-year statutory period.
 III Findings of Fact A
The land in dispute, deeded to the Church but claimed by St. Aubin by adverse possession, was referred to at trial as Plaintiff's Exhibit 74, a land survey begun in September 2005 and conducted by Donald Medeiros, a professional land surveyor and civil engineer. Sometime in 2003, St. Aubin entered this land and employed a bulldozer to clear trails throughout the property. (Tr. 4/3/2008 at 38.) St. Aubin's counterclaim of adverse possession is premised on his assertion that his activities on the Church's property did not commence with the bulldozing he began in 2003. He testified that he first "entered" the land sometime in 1986. (Tr. 4/1/2008 at 87.) *Page 4 
St. Aubin testified he walked the land several times in 1986, locating ancient stone walls, "archeological items," and "animal trails." (Tr. 4/1/2008 at 90; 4/2/2008 at 6.) While he testified that he never paid any taxes on the Church's property, nor erected any fences, walls, or buildings thereon, St. Aubin claimed that beginning in 1986 and continuing every year until the present, he groomed and improved trails on the subject property, included ribbons and boundary markers, and harvested wild crops. (Tr. 4/2/2008 at 8-11; 4/8/2008 at 74.) From 1987-2002, he claimed to have trimmed and groomed more than a dozen trails, "miles in length." (Tr. 4/8/2008 at 4.) St. Aubin introduced a series of photos from the years 1987-1999, which, he asserted, were evidence of trail maintenance, as well as ribbons and other markers he had placed on the Church's property during this period. (Def.'s Exs. I — Q.) Other than St. Aubin's own testimony, which this Court finds self-serving and incredible, there was no evidence that the wooded areas depicted in the photos actually existed on the Church's property or whether they existed on St. Aubin's own, like-wooded, adjacent property.
In an attempt to corroborate his claim of use and occupation of the subject property, St. Aubin presented John Andrews, a licensed land surveyor contracted by St. Aubin in the latter part of 2006. Mr. Andrews testified that an aerial photograph of the land in question, dated 1995, demonstrated trails on the property at the time the photograph was taken. (Tr. 4/9/2008 at 183-85.) Mr. Andrews testimony, however, was vague, confused, and unconvincing. He could not identify any trails with precision, or upon whose land they lie, or who used these alleged trails.
St. Aubin also presented Gerald Delisle, who testified that he had walked with St. Aubin on forested trails and collected firewood from the area, by St. Aubin's permission, since 1995. (Tr. 4/10/2008 at 245-50.) However, on cross-examination, Mr. Delisle admitted that he did not *Page 5 
know where the boundary between the Church's and St. Aubin's properties actually lied; and, when asked to locate the hill upon which he had collected wood on a plan of the area, he indicated a hill in an area beyond the borders of the Church's property. Id. at 256-57.
St. Aubin also called his friend of forty years, Phillip Griffin, to testify. Mr. Griffin claimed to have performed "trail maintenance" with St. Aubin on the Church's property, beginning in 1996. (Tr. 4/14/2008 at 17.) The Court finds his testimony to be biased and lacking in credibility, as it does the testimony of St. Aubin's wife, Eileen O'Brien, who also attempted to corroborate St. Aubin's testimony of his activities on the Church's property.
On the other hand, Mr. Medeiros, the surveyor — whom this Court finds totally credible — noticed no human activity such as that described by St. Aubin on the Church's property when he first conducted a survey along the southern boundary of that area in 2001. During that survey, he encountered no trails — only "dense vegetation" — such that chainsaws were needed to properly clear the area for the survey. (Tr. 3/25/2008 at 51.) Also in 2001, Mr. Medeiros performed a second survey, completed in 2003, for an owner of land adjacent to the Church's property. The second survey required him to travel the northeast corner of the Church's property and along its northern border. Again, he testified that no trails existed at this time. Id. at 52-54.
However, when Mr. Medeiros began to survey the Church's property in September, 2005, he noticed that several trails had been cut, some in the areas where he had observed no trails in 2001. Id. at 57-58. He also testified to several photos he had taken on the Church's property in 2006, with the location of where each photograph was taken noted on a drawing of the area he had prepared, and explained that the trails pictured in the photos could not have been created more than two years earlier, based on the state of the damage to the forest caused during the clearing of the trails. Id. at 76-92; Pl.'s Exs. 76, 77. *Page 6 
In addition, Asa Davol, the retired police chief of the Town of Tiverton who lives east of the Church's property, testified that since taking up residence there in 1982, he had hunted on significant portions of that property every year during the hunting seasons. (Tr. 4/14/2008 at 41.) Describing in detail where on the Church's property he often traveled, Mr. Davol, whom this Court finds credible, testified that until recent years there existed no trails other than an old cart path, an ancient trail which St. Aubin noted he did not create. (Tr. 4/14/2008 at 42-43; Tr. 3/31/2008 at 99.) It was not until March 2004 and thereafter, in this area he described as "virgin territory," that Mr. Davol observed evidence of human activity of any kind; he noticed several cut paths and red paint blotches on trees and rocks. (Tr. 4/14/2008 at 43-46.)
In addition, a registered engineer and registered land surveyor, Christopher Duhamel, using an aerial photograph of the subject property dated April 5, 1999, testified that, at the time the photograph was taken, there was "no apparent land use other than the natural land use." (Tr. 4/15/2008 at 75; Pl.'s Ex. 81.) Mr. Duhamel came to the same conclusion regarding a second aerial photo of the land in question, dated March 1, 2002. (Tr. 4/15/2008 at 76; Pl.'s Ex. 82.) However, when presented with a third aerial photograph of the subject area, dated April 6, 2006, Mr. Duhamel noted "man-made activity" — i.e., cut trails — throughout the Church's property. (Tr. 4/15/2008 at 77; Pl.'s Ex. 83.) Such paths appeared more clearly in the western section of the Church's property, largely populated by evergreen trees, and appeared with lesser clarity in the eastern section, largely populated by deciduous trees. On cross-examination, Mr. Duhamel agreed that trails less than the width of a road may not be visible on the photograph. (Tr. 4/15/2008 at 85-86.)
The Court also heard testimony from Lester Garvin, a retired Captain of U.S. Naval Intelligence who currently specializes in the analysis and interpretation of aerial photographs. *Page 7 
Mr. Garvin testified that a March 1, 2002 aerial photograph of the land in question showed no trails, other than the ancient cart path. (Tr. 4/15/2008 at 103-04; Pl.'s Ex. 86.) An April 6, 2006 aerial photograph, however, indicated substantial trails throughout the Church's property. (Tr. 4/15/2008 at 104-05; Pl.'s Ex. 86.)
Finally, John Viveiros, certified both as an arborist and a horticulturalist, who was present on the Church's land in 2006 and 2007 to aid Mr. Medeiros in the preparation of the survey, testified as to age of the trails currently extant on the Church's property. Mr. Viveiros referred to photographs of such trails, taken in 2006, and tied to specific locations on a drawing of the property prepared by Mr. Medeiros. (Pl.'s Exs. 76, 77.) Mr. Viveiros explained that in his knowledge and experience as an arborist and horticulturalist, the rate of decomposition and/or regeneration of trees felled in the preparation of the trails indicated that such trails could not have been created earlier than 2003. (Tr. 4/15/2008 at 113-18.)
Accordingly, after reviewing the relevant, credible evidence, this Court finds that St. Aubin may have entered the Church's property between 1986 and 2002, but during that period he did he did not cut or maintain any trails on that property. It was not until 2003 that such activity occurred.
 B
St. Aubin also testified that he had, since 1985, left various markers intended to indicate his use or ownership of the Church's property. He claimed to have placed "no hunting" signs in 1988 or 1989, along the wall that intersects Cole Brook and along South Lake Road. (Tr. 4/3/2008 at 61-62.) In the early 1990s, he testified, he had placed "Posted no trespassing" signs all along South Lake Road and the southern boundary of the Church's property. Id. at 65. He also testified that he replaced these signs, as needed. Id. at 63-64. Further, since 1985, he *Page 8 
claimed to have tied various ribbons along the property to find his way and identify points of interest, including placing flags to denote wetlands in 1995. Id. at 71-72. In addition, as late as 2000 or 2001, he claimed to have painted "PL" — to indicate "property line" — on the southern border. Id. at 67-68.
St. Aubin attempted to corroborate the presence of "no hunting" and "no trespassing" signs, as early as 1995, through Wilson Sallum, a lettuce farmer. However, Mr. Sallum could not accurately place these signs on the Church property, and could not say who installed any signs he may have seen. (Tr. 4/14/2008 at 11-13.) In addition, although Mr. Delisle, who had collected firewood from a hill on St. Aubin's land, testified that he had seen "red flags" on trees, he was unsure of the actual boundary between St. Aubin's land and that of the Church. (Tr. 4/10/2008 at 253, 256.)
Further, St. Aubin's wife, Eileen O'Brien, testified that she had purchased "no hunting" and "no trespassing" signs in the late 1980s and that St. Aubin placed these signs along the Church property's border on South Lake Road. (Tr. 4/14/2008 at 29-30.) As previously mentioned, the Court finds Mrs. O'Brien's testimony lacking in credibility.
Mr. Medeiros, however, testified that during his survey of the Church property beginning in September, 2005, he first observed "no trespassing" and "no hunting" signs along the property's southern and northeast boundaries on October 27, 2005; thus, he concluded, the signs were installed immediately prior to that date. (Tr. 3/25/2008 at 65, 92-95.) He demonstrated the location of each of these signs using photographs and a drawing of the area he prepared, indicating where each photograph was taken. (Pl.'s Ex. 76, 77.) Moreover, Mr. Davol, who had hunted on the property since 1982, noticed no signs or markings of any kind until after 2004, when he began to notice other activity such as the bulldozing of trails. (Tr. 4/14/2008 at 46-47.) *Page 9 
Accordingly, after reviewing the relevant, credible evidence, this Court finds that St. Aubin had not marked the Church property with signs or boundary markers until sometime after 2004.
 IV Conclusions of Law
Because this Court finds that while St. Aubin may have entered the Church's property beginning in 1986, but did not cut any trails or install any signs or makers on the property from 1986-2002, his activities on the land during that period cannot be found to have been "open and notorious" under the law of adverse possession. The Rhode Island Supreme Court has held that an adverse possession claimant's actions must be sufficiently "open and notorious to put a reasonable property owner on notice of [the claimant's] hostile claim."Tavares v. Beck, 814 A.2d 346, 352 (R.I. 2003). Specifically, when determining whether a claimant has used "rural, undeveloped woodlands" in an "open and notorious" manner, this Court must be satisfied that a claimant used such property in a manner consistent with how owners of similar property "would typically use such land, and whether these uses took place in a manner `calculated to attract attention,' thus placing the world on constructive notice of his adverse claim." Id. at 354 (quoting Sherman v. Goloskie, 95 R.I. 457, 466, 188 A.2d 79, 84 (1963)) (emphasis added).
Here, St. Aubin's failure to convince this Court, by clear and convincing evidence, that before 2003 he created or maintained any trails on the Church's property, or placed any signs indicating his ownership of the property, necessitates the conclusion that any activity he may have performed on the property was not "calculated to attract attention" and therefore not sufficiently "open and notorious to put a reasonable property owner on notice of [his] hostile claim." Seeid. at 352, 354. St. Aubin's failure to carry his burden on a single element of *Page 10 
adverse possession bars a finding in his favor. See Acampora v.Pearson, 899 A.2d 459, 466 (R.I. 2006).
Although the Court does find that beginning in 2003 St. Aubin entered the disputed parcel, bulldozed trails, and hung signs indicating his ownership of the property, the Court need not delve into an analysis of the adverse nature of these actions — i.e., whether they were actual, open, notorious, hostile, under a claim of right, continuous, and exclusive — because these actions did not occur for the requisite ten-year statutory period. See Taffinder v. Thomas, 119 R.I. 545, 551,381 A.2d 519, 522 (1977) (determining first whether the claimants satisfied the requisite ten-year statutory period, and, finding that they had, addressed the elements of adverse possession).
 V Conclusion
For the foregoing reasons, this Court concludes that Richard K. St. Aubin is not, by virtue of adverse possession, the fee simple owner of the property deeded to the Amicable Congregational Church and described in the Tiverton Tax Assessor Map at Map 4-2, Block 127, Card 8. St. Aubin's counterclaim as to record title, acquiescence, and adverse possession is therefore denied. Further, St. Aubin is permanently enjoined from trespassing on the Church's land.
Counsel for the Amicable Congregational Church shall present an order in conformance with this Decision.
[1] Although St. Aubin challenged the Church's claim to record title of the subject property, and much testimony was heard and exhibits submitted on the issue, he conceded at the end of trial that the Church indeed held proper title to the property. (See Tr. 4/15/2008 at 168.) *Page 1